RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 13a0077p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

MELISSA HEARRING, Individually and as
natural mother and next friend of B.H., a
minor child,

        *Plaintiff-Appellee*,

     *v.*

KAREN SLIWOWSKI, Individually,

        *Defendant-Appellant*,

METROPOLITAN GOVERNMENT OF
NASHVILLE-DAVIDSON COUNTY TENNESSEE,

        *Defendant*.

No. 12-5194

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cv-746—William J. Haynes, Jr., District Judge.

Argued: January 22, 2013

Decided and Filed: March 27, 2013

Before: SUHRHEINRICH, MOORE, and GIBBONS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Allison L. Bussell, DEPARTMENT OF LAW OF THE METROPOLITAN
GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville,
Tennessee, for Appellant. Phillip L. Davidson, Nashville, Tennessee, for Appellee.
**ON BRIEF:** Allison L. Bussell, Kevin C. Klein, DEPARTMENT OF LAW OF THE
METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,
Nashville, Tennessee, for Appellant. Phillip L. Davidson, Nashville, Tennessee, for
Appellee.

1

————————————————

**OPINION**

————————————————

KAREN NELSON MOORE, Circuit Judge.   In this case, a school nurse, Defendant-Appellant Karen Sliwowski ("Sliwowski"), conducted a visual examination of six-year-old female student B.H.'s genital area for medical purposes in response to the student's complaints of itching and discomfort in the area.  The student's mother, Plaintiff-Appellee Melissa Hearring ("Hearring"), on behalf of B.H., alleges that this medical examination violated B.H.'s Fourth Amendment right to be free from unreasonable searches.   The district court denied summary judgment and denied Sliwowski qualified immunity, finding that the visual examination, conducted without consent and in the absence of a medical emergency, was an unreasonable search that violated B.H.'s Fourth Amendment rights.  On appeal, we conclude that the law was not clearly established regarding whether a medically motivated examination by a school nurse exposing a student's body constitutes a search subject to the protections of the Fourth Amendment.  Accordingly, Sliwowski is entitled to qualified immunity, and we **REVERSE** the district court's denial of summary judgment as to Sliwowski.  We **REMAND** for further proceedings consistent with this opinion.

## I.  BACKGROUND

At the time of the events at issue, Hearring's daughter, B.H., was a six-year-old student attending Mt. View Elementary School in Davidson County, Tennessee.  On October 27, 2009, while at school, B.H. complained of irritation in her genital area and that it "burned" when she urinated.  *See* R. 33-4 (Back Dep. at 13–14) (Page ID #456). This complaint was reported to the school's secretary, Pam Back ("Back"), who called Hearring and left a message regarding B.H.'s complaint.  *See id.*  Hearring returned the school's call that day and informed the school that B.H. had a history of chronic bladder infections.  *See id.*

Two days later, on October 29, 2009, B.H. again came to the school office with the same complaint.  *See* R. 33-4 (Ex. 2 to Back Dep.) (Page ID #461).  Back placed B.H. in the school's clinic to wait for the school's nurse, Sliwowski, who had not arrived at the school yet.  *See id.*  Back called Hearring and left a message.  *Id.*  After Sliwowski arrived at the school's campus, she met with Back, who informed Sliwowski of B.H.'s complaints, including that "she had pain when urinating, had trouble sitting and walked funny."  Appellee Br. at 5.  Sliwowski then took B.H. into a private bathroom used by teachers, and Back accompanied her.  *See* R. 33-1 (Ex. 1 to Sliwowski Dep.) (Page ID #442).  In an effort to assess the student, Sliwowski asked B.H. to pull down her pants and underwear, and Sliwowski then "did a visual check to see if the student had any reddened or irritated areas along her legs, and inner thigh area that could have been causing her discomfort."  *Id.*  Sliwowski then asked B.H. to spread "her labia to check for redness."  *See id.*  Sliwowski did not touch B.H. during the examination.  Sliwowski also testified that there was no suspicion of child abuse motivating the examination.  R. 33-1 (Sliwowski Dep. at 16) (Page ID #435).  Hearring alleges that B.H. was "confused, humiliated, and frightened" by the examination.  R. 10 (Am. Compl. ¶ 6) (Page ID #41).

National and state nursing guidelines "restrict medical examinations of students and prohibit a genital examination of a student absent parental consent or a medical emergency."  *Hearring v. Sliwowski*, 872 F. Supp. 2d 647, 654 (M.D. Tenn. 2012).  B.H.'s parents did not give consent prior to the examination.  Appellee Br. at 6.  Hearring's expert witness opined that in her view, "the visual inspection of B.H.'s genital area and the opening of her labia was not indicated nor appropriate under the specific circumstances of this case."  R. 33-10 (Expert Stmt. at 13) (Page ID #545).  The expert further opined that "performing a visual inspection of a child's genital area is not the norm, and parental consent would absolutely be needed in the absence of an emergency."  *Id.* at 12 (Page ID #544).

On August 6, 2010, Hearring filed a complaint in the U.S. District Court for the Middle District of Tennessee naming Sliwowski as a defendant in her individual

capacity and alleging that Sliwowski's visual examination of B.H. violated B.H.'s Fourth Amendment right to be free from unreasonable searches. R. 1 (Compl.) (Page ID #1). The complaint was later amended to add Metropolitan Government of Nashville-Davidson County, Tennessee ("Metro") as a municipal defendant, and Hearring alleged that the municipality was liable for the alleged unconstitutional search in virtue of its failure to train appropriately its school nurses. *See* R. 10 (Am. Compl. ¶¶ 10–11) (Page ID #42–43). Defendants moved for summary judgment, and Sliwowski argued that she was not liable on the basis of qualified immunity. *See* R. 26 (Defs.' Mot. for Summ. J. at 1) (Page ID #357). The district court denied summary judgment with respect to both defendants, finding that B.H.'s constitutional rights were violated by the medical examination, and that because the right at issue was clearly established by prior precedent, Sliwowski was not entitled to qualified immunity. *See Hearring*, 872 F. Supp. 2d at 673, 679. Sliwowski timely appealed.

## II. JURISDICTION

Hearring's complaint, brought under 42 U.S.C. § 1983, alleges a constitutional violation, and thus subject-matter jurisdiction exists pursuant to 28 U.S.C. § 1331. Although denials of summary judgment generally are not appealable, "denials of qualified immunity at the summary judgment stage that are based on the district court's 'determination about pre-existing clearly established law'" are reviewable as final orders. *Bomar v. City of Pontiac*, 643 F.3d 458, 461 (6th Cir. 2011) (quoting *Johnson v. Jones*, 515 U.S. 304, 317 (1995)); *see Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985).

## III. ANALYSIS

### A. Standard of Review

We review de novo "the district court's determination on the legal question of the availability of qualified immunity," viewing the facts in the light most favorable to the plaintiff. *Brannum v. Overton Cnty. Sch. Bd.*, 516 F.3d 489, 494 (6th Cir. 2008); *see also Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011).

**B.  Qualified Immunity**

Although violations of constitutional rights by government officials acting under color of state law are generally redressable through an action under § 1983, the doctrine of qualified immunity shields officials from liability "insofar as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see Stoudemire v. Mich. Dep't of Corr.*, 705 F.3d 560, 567 (6th Cir. 2013).  "In determining whether qualified immunity applies, we ask, (1) whether, considering the allegations in a light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Bazzi v. City of Dearborn*, 658 F.3d 598, 606–07 (6th Cir. 2011) (internal quotation marks omitted); *see, e.g.*, *Scott v. Harris*, 550 U.S. 372, 377 (2007).  We have discretion to decide which of these two questions to address first, considering the circumstances of the particular case before us.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In this case, as we explain below, "it is plain that a constitutional right [wa]s not clearly established but far from obvious whether in fact there is such a right."  *Id.* at 237.  Because the constitutional-interpretation question of whether B.H.'s Fourth Amendment rights were violated "will have no effect on the outcome of the case," we need not resolve it.  *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2080 (2011) (internal quotation marks omitted).  Accordingly, we will assume that Hearring has alleged a violation of a Fourth Amendment right and address whether that right was clearly established.  *See Waeschle v. Dragovic*, 576 F.3d 539, 544 (6th Cir. 2009) (addressing the clearly established prong first in the qualified-immunity analysis).

A government official will be liable for the violation of a constitutional right only if the right was "'clearly established . . . in light of the specific context of the case.'" *Binay v. Bettendorf*, 601 F.3d 640, 651 (6th Cir. 2010) (quoting *Scott*, 550 U.S. at 377).  A right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *see Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009) ("The key determination is whether a defendant moving for summary

judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional."). Thus, "there are 'limitations upon the extent to which a court may rely on holdings in contexts other than the one being considered to demonstrate that a principle has been clearly established.'" *Andrews v. Hickman Cnty.*, 700 F.3d 845, 853 (6th Cir. 2012) (quoting *Ohio Civil Serv. Emps. Ass'n v. Seiter*, 858 F.2d 1171, 1176 (6th Cir. 1988)).

Nonetheless, a case "directly on point" is not required. *al-Kidd*, 131 S. Ct. at 2083. We have held that there may be instances where "'[g]eneral statements of the law' are capable of giving clear and fair warning to officers even where 'the very action in question has [not] previously been held unlawful.'" *Smith v. Cupp*, 430 F.3d 766, 776–77 (6th Cir. 2005) (quoting *Anderson*, 483 U.S. at 640); *see also Walker*, 649 F.3d at 503–04. Some violations of constitutional rights are so obvious that a "materially similar case" is not required for the right to be clearly established. *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). In determining whether a right was clearly established, we look first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal, and we ask whether these precedents "placed the . . . constitutional question beyond debate." *al-Kidd*, 131 S. Ct. at 2083; *see Andrews*, 700 F.3d at 853.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, . . . against unreasonable searches" by government officials. U.S. CONST. amend. IV. It is well established that the Fourth Amendment's reasonableness requirement applies to searches of students for contraband conducted by school officials. *See, e.g.*, *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). A well-developed line of precedent discusses under what circumstances investigative searches of students' naked bodies are reasonable under the Fourth Amendment. *See, e.g.*, *Safford Unified Sch. Dist. #1 v. Redding*, 557 U.S. 364 (2009) (strip search of middle-school student for pills); *Vernonia Sch. Dist. 47J v. Acton*, 515 U.S. 646 (1995) (drug testing of student-athletes); *Knisley v. Pike Cnty. Joint Vocational Sch. Dist.*, 604 F.3d 977 (6th Cir. 2010) (strip searches of students for stolen items); *Brannum*, 516 F.3d 489 (surreptitious video

surveillance of middle-school locker rooms); *Beard v. Whitmore Lake Sch. Dist.*, 402 F.3d 598 (6th Cir. 2005) (strip searches of students for stolen money). Given the extensive discussion by this court and the Supreme Court regarding when strip searches of students are constitutionally permissible, we have stated that "this Circuit's law on student strip searches was clearly established as early as 2005." *Knisley*, 604 F.3d at 982.

In its decision denying Sliwowski qualified immunity, the district court focused on the severe intrusion into B.H.'s privacy interests, noting that prior precedent made clear that "ordinary common sense" puts school administrators on notice that a search of a student's naked body "grossly offend[s]" the student's sense of decency, self-respect, and bodily privacy. *Hearring*, 872 F. Supp. 2d at 671 (quoting *Brannum*, 516 F.3d at 499); *see also Tarter v. Raybuck*, 742 F.2d 977, 983 (6th Cir. 1984). The district court concluded, following the strip-search cases, that "the fundamental dignity of a young person's body is *so obvious*" that school officials had fair notice that a strip-search of a student "without justification" is improper. *Hearring*, 872 F. Supp. 2d at 673. We do not disagree. Nonetheless, a critical factor distinguishes this case from the more typical strip-search cases: namely, it is clear that Sliwowski's visual inspection of B.H.'s genital area was not an investigation for contraband, but rather was an attempt to assess B.H.'s medical condition. *See Hearring*, 872 F. Supp. 2d at 652. And what is not obvious from existing authority is whether this kind of medically motivated visual examination constitutes a search subject to the Fourth Amendment standards developed in the strip-search case law. This legal question, whether a visual examination conducted for medical purposes by a medical professional falls within the definition of "search" for Fourth Amendment purposes, is critical, because the Fourth Amendment's protections are not triggered until a search occurs. *See Kyllo v. United States*, 533 U.S. 27, 31 (2001); *Widgren v. Maple Grove Twp.*, 429 F.3d 575, 578 (6th Cir. 2005) ("The Fourth Amendment's protections hinge on the occurrence of a 'search,' a legal term of art whose history is riddled with complexity."). Accordingly, we must determine whether it was clearly established that the Fourth Amendment applies to the actions of a school nurse when she attempts to provide medical care to a student.

There is no Supreme Court precedent directly answering the question of whether the Fourth Amendment applies to school nurses in their provision of medical care. This court has not taken a definitive position on whether the Fourth Amendment's protection against unreasonable searches applies to the provision of medical services by government-employed health-care professionals. Notably, we previously held that the Fourth Amendment did not apply to the actions of paramedics responding to a 911 call who "were not acting to enforce the law, deter or incarcerate," but rather were acting to "provide medical aid." *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 222 (6th Cir. 2007). Even if the paramedics' techniques were medically unreasonable or excessive, such "improper medical treatment by a government employee, standing alone, does not violate the Fourth or Fourteenth Amendment." *Id.*; *see also McKenna v. Edgell*, 617 F.3d 432, 440 (6th Cir. 2010) (holding that there was no clearly established right under the Fourth Amendment to be free from "dangerously negligent and invasive medical care" provided by government-employed medical-emergency responders), *cert. denied,* 131 S. Ct. 1790 (2011); *Sullivan v. Bornemann*, 384 F.3d 372, 377 (7th Cir. 2004) (no Fourth Amendment violation when police officers acted at the direction of medical personnel seeking to provide medical aid to plaintiff); *cf. Jackson v. Schultz*, 429 F.3d 586, 590 (6th Cir. 2005) ("It is not a constitutional violation for a state actor to render incompetent medical assistance."). These cases imply that there may be some circumstances in which the provision of incompetent medical assistance is *not* actionable under the Fourth Amendment. *Cf. United States v. Attson*, 900 F.2d 1427, 1433 (9th Cir. 1990) (holding that a blood sample drawn for medical purposes was not a search for Fourth Amendment purposes). Given that there is no direct precedent from this court holding that the Fourth Amendment applies to visual examinations conducted by medical professionals for medical purposes and some precedent indicating that the Fourth Amendment does not apply in such circumstances, we cannot say that it is clearly established under our precedent that the conduct of a school nurse giving medical aid to students is subject to the standard of reasonableness imposed by the Fourth Amendment.

Given the lack of precedents from this court addressing the particular circumstances of this case, the district court relied on three out-of-circuit cases to support the conclusion that the right at issue here was clearly established. *See Hearring*, 872 F. Supp. 2d at 672–73. This court has stated that out-of-circuit precedent clearly establishes rights only in "extraordinary case[s]" when the out-of-circuit decisions "both point unmistakably to the unconstitutionality of the conduct complained of and [are] so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Seiter*, 858 F.2d at 1177; *see also Daugherty v. Campbell*, 935 F.2d 780, 784 (6th Cir. 1991).

The out-of-circuit authority relied on by the district court does not meet this standard. First, *Tenenbaum v. Williams*, 193 F.3d 581 (2d Cir. 1999), held that a medical examination of a student that served a primarily investigative function relating to suspected child abuse violated the Fourth Amendment. *Id.* at 606. This holding does not point unmistakably to the unconstitutionality of Sliwowski's conduct, because the examination of B.H. was undertaken to provide medical care, not to investigate child abuse, which could lead to law-enforcement action. R. 33-1 (Sliwowski Dep. at 16) (Page ID #435). The Eleventh Circuit case cited by the district court, *Jenkins ex. rel Hall v. Talladega City Board of Education*, 115 F.3d 821 (11th Cir. 1997) (en banc), is even further off-point. *Jenkins* involved an investigatory strip search for stolen money, and thus did not give Sliwowski fair warning regarding the constitutionality of searches of students for medical purposes.

*Dubbs v. Head Start, Inc.*, 336 F.3d 1194 (10th Cir. 2003), which involved medical examinations, including genital examinations, of pre-school children without parental consent, is factually closer to the instant case. The Tenth Circuit held that the medical examinations constituted searches under the Fourth Amendment. *See id.* at 1207. However, this holding was not "so clearly foreshadowed by applicable direct authority as to leave no doubt" in Sliwowski's mind that her examination of B.H. would be held unconstitutional by this court. *Daugherty*, 935 F.3d at 784 (internal quotation

marks omitted). Specifically, the Tenth Circuit's holding that the medical examinations were searches under Fourth Amendment law is not obvious under this court's precedent, and it is in direct conflict with decisions of other courts of appeals. *See Peete*, 486 F.3d 217; *Attson*, 900 F.2d 1427. Sliwowski could not be expected reasonably to have inferred from *Dubbs*, a single out-of-circuit case, that the medical inspection of B.H. violated the Fourth Amendment. *See Seiter*, 858 F.2d at 1177–78 ("[A] mere handful of decisions of other circuit and district courts, which are admittedly novel, cannot form the basis for a clearly established constitutional right in this circuit."). Therefore, the out-of-circuit authority cited by the district court does not demonstrate that the right at issue here was clearly established at the time of the examination of B.H.'s genital area.

In sum, existing precedents did not give Sliwowski fair warning that her medical assessments were subject to the Fourth Amendment's reasonableness requirement, and accordingly the right at issue was not clearly established. *See al-Kidd*, 131 S. Ct. at 2083. Sliwowski is thus entitled to qualified immunity regardless of whether her conduct amounted to a violation of B.H.'s Fourth Amendment rights, and we express no opinion as to whether there was a constitutional violation in this case.[1]

## IV. CONCLUSION

For the foregoing reasons, we **REVERSE** the district court's denial of summary judgment as to Sliwowski. We **REMAND** for further proceedings consistent with this opinion.

---

[1] We also take no position on whether Sliwowski's conduct may have been actionable under a different provision of the Constitution. *See, e.g.*, *Doe v. Claiborne Cnty., Tenn.*, 103 F.3d 495, 506 (6th Cir. 1996) (holding that "a schoolchild's right to personal security and to bodily integrity manifestly embraces the right to be free from sexual abuse at the hands of a public school employee. The substantive component of the Due Process Clause protects students against abusive governmental power as exercised by a school."); *Poe v. Leonard*, 282 F.3d 123, 136–37 (2d. Cir. 2002) (holding that the surreptitious videotaping of an officer undressing by fellow officers was actionable as a violation of the Fourteenth Amendment's substantive-due-process "right to privacy in one's unclothed body"); *see also Cruzan v. Dir., Mo. Dep't of Health*, 497 U.S. 261, 278 (1990) (recognizing a constitutionally protected liberty interest under the Fourteenth Amendment in refusing unwanted medical treatment).