RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 15a0282p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

MELISSA HEARRING, Individually and as natural mother and next friend of B.H., a minor child,

*Plaintiff-Appellee*,

*v.*

Nos. 14-6039/6315

KAREN SLIWOWSKI, Individually,

*Defendant*,

METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:10-cv-00746—William J. Haynes, Jr., Chief District Judge.

Decided and Filed:  November 20, 2015

Before:  COLE, Chief Judge; SUTTON, Circuit Judge; BELL, District Judge.[*]

_____

**COUNSEL**

**ON BRIEF:**  Allison L. Bussell, James E. Robinson, Keli J. Oliver, DEPARTMENT OF LAW OF THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Nashville, Tennessee, for Appellant.  Phillip L. Davidson, Brentwood, Tennessee, for Appellee.

---

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

_____

**OPINION**

_____

SUTTON, Circuit Judge.  This dispute began in 2009 when a first-grader in the Nashville public schools complained to a teacher that her genitals hurt.  The teacher sent the child to a school nurse who visually inspected the girl.  Perhaps understandably, that did not make the girl's mother happy, particularly since the nurse did not seek her consent before the examination.  Less understandably, the examination led to a half-dozen years of litigation.

The mother filed a money-damages action against the nurse and the school district for conducting a search in violation of her child's Fourth and Fourteenth Amendment rights.  She sought $1.75 million.  The first stage of this dispute ended when our court granted qualified immunity to the nurse on the ground that existing law did not clearly establish that a medical examination of a child in response to complaints of pain violated the Fourth Amendment's prohibition on unreasonable searches and seizures.  712 F.3d 275 (6th Cir. 2013).  The second stage of this dispute seemed to end when (1) a jury rejected the mother's claim against the school district on the ground that the examination did not violate the child's Fourth and Fourteenth Amendment rights, and (2) the district court rejected the mother's request for a new trial.  The court, however, did not enter judgment for the school district.  It instead issued an injunction that required the school system to train its nurses more effectively to prevent incidents of this sort from happening again.  This impromptu injunction was not an everyday exercise of judicial power, and it is one we must reverse for three reasons:  (1) the mother did not seek such an injunction; (2) the undisturbed (and now unappealed) jury verdict that no constitutional violation occurred eliminated the factual predicate for such an injunction; and (3) the mother (and daughter) lacked standing to obtain such an injunction anyway, *see City of Los Angeles v. Lyons*, 461 U.S. 95 (1983).  For these reasons and those elaborated below, we reverse and direct the district court to enter judgment in favor of the school district.

I.

In October 2009, B.H., a first-grade student in the Metropolitan Nashville Public Schools, complained of pain in her genitals. A school secretary called her mother, Melissa Hearring, who responded that B.H. often suffered from bladder infections. No physical examination of B.H. occurred at that point. Two days later, B.H. made a similar complaint. This time, the secretary asked the school nurse, Karen Sliwowski, to see B.H. Sliwowski and the secretary took B.H. to a faculty restroom where Sliwowski asked B.H. to remove some of her clothes. Sliwowski visually checked B.H.'s genitals for redness, including by asking B.H. to "open her labia." R. 204 at 46. The examination lasted a minute and B.H.'s genitals were exposed for "[s]econds." *Id.* at 13.

The aftermath lasted six years. Hearring filed this § 1983 money-damages action on B.H.'s behalf. She alleged that Sliwowski's examination violated B.H.'s Fourth (and Fourteenth) Amendment right to be free from unreasonable searches. She also alleged that the Metropolitan Government of Nashville and Davidson County, Sliwowski's then-employer and for our purposes the "school district," violated B.H.'s Fourth Amendment rights because it did not have a policy in place concerning this type of examination and failed to train Sliwowski adequately.

Sliwowski filed a motion for summary judgment on qualified immunity grounds. The district court denied the motion on the ground that "B.H.'s Fourth Amendment right to be free from such a[] highly invasive search was clearly established at the time of Sliwowski's search." *Hearring v. Sliwowski*, 872 F. Supp. 2d 647, 673 (M.D. Tenn. 2012). A panel of this court reversed, holding that qualified immunity protected Sliwowski from the Fourth Amendment claim. *Hearring v. Sliwowski*, 712 F.3d 275 (6th Cir. 2013). On remand, Hearring added a Fourteenth Amendment claim against the school district, alleging that its failure to train made it liable for a violation of B.H.'s substantive due process rights because the exam was "an invasion of [B.H.'s] privacy." R. 88 at 5.

The money-damages claims against the school district—for an unconstitutional search and unconstitutional invasion of privacy—proceeded to trial. To prevail, Hearring had to show that (1) Sliwowski violated at least one of these constitutional rights, (2) the school district

showed "deliberate indifference" to those rights through its failure to train employees properly in this area, and (3) the failure caused the constitutional violation. *See, e.g., Connick v. Thompson*, 131 S. Ct. 1350, 1357–58 & n.3 (2011); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694–95 (1978). The jury balked at the first step. It found that Sliwowski did not violate either constitutional right. Hearring moved for a new trial, and the district court denied the motion. The court, however, did not leave it at that. It granted an unrequested injunction, one that "require[d] training of the relevant Metro school employees" on constitutional limits "to ensure safeguards for school children's privacy." R. 186 at 14–15. Two days after this decision, Hearring moved to amend her complaint to add a request for an injunction consistent with the one the district court ordered. Another two days later, the court granted the motion through a handwritten note on the first page of the motion, saying: "This motion is granted, but Plaintiff's complaint sought whatever relief the Court deemed just, fit and proper." R. 190 at 1. The school district appealed the injunction. Hearring did not appeal the district court's denial of a motion for a new trial.

II.

The district court erred in imposing the injunction.

*First*, Hearring never sought an injunction and indeed in the pre-trial order expressly sought only money damages. Her original and amended complaints, all three of them, say nothing about an injunction. They mention only her requests for money damages. The joint pre-trial order filed by the parties and issued by the district court made this request explicit. That order "supplant[ed] the pleadings" and gave a "Succinct Statement of the Relief Sought": "The Plaintiff is seeking One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) in compensatory damages, attorney fees, and costs." R. 168 at 1, 7. The parties, no surprise, never offered any evidence or argument about why such an injunction should be granted or for that matter denied. Ours is an adversarial system. Courts must give both sides of the case an opportunity to join a debate about any appropriate relief, requested or not, in a given matter. Nothing of the sort happened here—even after four years of litigation.

That the plaintiff's complaints sought "such other and further relief as the Court deems fit and proper" does not justify the order. R. 1 at 4; R. 10 at 6; R. 88 at 7. Hearring agreed that the

pre-trial order "supplant[ed]" her earlier pleadings that included this language. R. 168 at 1. Even had that not been the case, one would still expect to see a request for such relief before a court entered it. That the district court later granted Hearring's motion to amend her complaint—after the jury rejected the pleaded claims and after the court entered the spur-of-the-moment injunction—does not make up for the error. The court had no authority to grant an amendment to a by-then superseded complaint. The point at any rate is to give the parties, even the ostensibly benefitted party, an opportunity to protest or promote the injunction *before* the court enters it. That did not happen. If we require courts to give "notice to the adverse party" before issuing a *preliminary* injunction, it follows that we should do (at least) the same before issuing a *permanent* injunction. Fed. R. Civ. P. 65(a)(1); *see also Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 432 n.7, 439 (1974). An unprompted and improvised permanent injunction cannot be justified by a prompted and (essentially) scripted request for an injunction after the fact.

*Second*, the jury rejected the necessary factual predicate for such an injunction. It found that no constitutional violation occurred. Judges have authority to enter injunctions against a party—to change the party's behavior through the power of the federal courts—when they have done something wrong, and even then that will not always suffice by itself. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 32 (2008). But when "there was no constitutional violation[,] . . . there is no ongoing unconstitutional conduct to enjoin." *Taylor v. Mich. Dep't of Nat. Res.*, 502 F.3d 452, 458 (6th Cir. 2007). Any authority the district court had to require the school district to create this training program stemmed only from a finding that the school district had violated the constitutional rights of its students. Consider the language of § 1983, the sole source of authority for this cause of action. It requires a constitutional (or statutory) "deprivation" before the court may hear "an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983. In the absence of any such finding, indeed in the face of a contrary finding, the court had no power to issue this injunction.

*Third*, even if we could overlook these two errors, there was one more still. Hearring (and her daughter) lacked standing to seek such an injunction. The federal courts are not free-range problem solvers. The Constitution empowers us to hear "Cases" or "Controversies," and

that is it.  U.S. Const. art. III, § 2.  The Supreme Court has repeatedly said that the standing requirement "gives meaning to these constitutional limits by identifying those disputes which are appropriately resolved through the judicial process." *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (quotation omitted).  Plaintiffs bear the burden of establishing standing and must do so with respect to each type of relief they seek (or receive unrequested). *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 550 (6th Cir. 2003).  To establish standing for a forward-looking injunction, a party must show a "threat of suffering 'injury in fact' that is concrete and particularized; the threat must be actual and imminent, not conjectural or hypothetical." *Summers*, 555 U.S. at 493.

Hearring cannot establish an "actual and imminent" threat, and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), shows why.  Los Angeles police applied a chokehold to a plaintiff who later sought an injunction against the department's chokehold policy. *Id.* at 97–98.  The Court held the plaintiff lacked standing for that relief because he had not shown that he "faced a real and immediate threat of again being illegally choked," even if there was a possibility that the Los Angeles police might use a similar chokehold on someone else. *Id.* at 110.  Hearring faces a comparable problem.  All of the evidence at trial showed that exams like the one Sliwowski performed on B.H. are vanishingly rare.  The only person we know of who has ever performed one, as it happens, does not have the job anymore.  Sliwowski left the job not long after this incident.  The risk that B.H. would be subject to another such search is no more "actual and imminent" than the Chicago Cubs (or, we fear, the Cleveland Indians) winning the World Series.  Hearring's claim, like the claim in *Lyons*, rests on mere "speculation," and that does not suffice. *Id.* at 108.

The district court as it turns out did not justify the injunction on the ground that B.H. would be injured anew; the court did not justify the injunction with reference to B.H. at all.  It justified the relief as "necessary" to "ensure that . . . children's Fourth Amendment rights are not subject to the discretion of the school official in the field."  R. 186 at 14–15.  We have no problem with the sentiment behind the order; it's just that the court lacked authority to impose it.  If advisory opinions are problematic, *orders* beyond the scope of Article III are worse.  Such orders are not just "ghosts that slay," Felix Frankfurter, *A Note on Advisory Opinions*,

37 Harv. L. Rev. 1002, 1008 (1924); they are orders that exercise power over real people and real institutions in the here and now with no basis for doing so. *Cf. Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106–07 (1998). Because Hearring lacks standing to seek the injunction, it cannot stand.

## III.

The school district also appeals the district court's decision to set aside its award of costs. Soon after the jury returned its verdict, the school district asked the court to order Hearring to pay about $3,400 in court-reporter fees. Because the district was "the prevailing party" and Hearring did not object, the court taxed these costs. Fed. R. Civ. P. 54(d)(1); M.D. Tenn. R. 54.01(a); *see also* 28 U.S.C. § 1920. After the district court entered the injunction, Hearring moved to set aside the award. The injunction, as she saw it, made her a "prevailing party" no longer required to pay the school district's costs. The district court agreed and set aside the award. Because we reverse the injunction, Hearring no longer is a "prevailing party." *See Balsley v. LFP, Inc.*, 691 F.3d 747, 771 (6th Cir. 2012). The school district is entitled to these costs.

For these reasons, we vacate the injunction, reverse the order setting aside the cost award, and remand with instructions to reinstate that award and to reenter judgment on the jury verdict in favor of the defendant.