NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0435n.06

No. 15-2145

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 29, 2016
DEBORAH S. HUNT, Clerk

KATHLEENE SCHATTILLY, Parent and
Next Friend of A.F., a minor,

    **Plaintiff-Appellant,**

v.

THOMAS DAUGHARTY, MICHELLE
ACEVEDO, and TAMIKA WILLIAMS,

    **Defendants-Appellees.**

)
)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN


OPINION

Before: MOORE, McKEAGUE, and DONALD, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** In response to reports that Kathleene Schattilly was abusing and neglecting her two youngest children, state officials interviewed the children at school and, based on what the children told them, decided to place all six of Schattilly's children in a temporary residential program. Although the four oldest children returned home the next day, the two youngest did not, and the state filed a petition to remove them from Schattilly's care. Three years later, Schattilly filed suit, alleging that the state officials violated her First Amendment and Fourteenth Amendment rights. Schattilly also challenged the constitutionality of the Michigan statute that authorized the state officials to interview the children at school. The district court dismissed the claims against the state officials on grounds of absolute immunity and qualified immunity and dismissed Schattilly's challenge to the statute for lack of standing. We **AFFIRM** the judgment of the district court.

## I.  BACKGROUND

### A.  Facts

Because this case comes to us on an appeal from a dismissal under Federal Rules of Civil Procedure 12(b)(6) and 12(c), we construe Schattilly's complaint in the light most favorable to her and accept all of her factual allegations as true.  *Heinrich v. Waiting Angels Adoption Servs., Inc.*, 668 F.3d 393, 403 (6th Cir. 2012).

Schattilly was the legal guardian of six children, including Bailey F. (who was a minor at the time of the incident but is now an adult) and A.F. (who is still a minor).  R. 6 (Am. Compl. ¶¶ 2, 22, 50) (Page ID #30, 32, 35).  In May 2011, counselors at Bailey and A.F.'s school contacted Michigan's Children's Protective Services to report that Schattilly was abusing and neglecting them.  *Id.* ¶¶ 11, 13 (Page ID #31).  Children's Protective Services sent Tamika Williams, an investigator, to interview Bailey and A.F.  *Id.* ¶¶ 15, 20, 22 (Page ID #31, 32).  Williams, accompanied by Michelle Acevedo, a supervisory social worker, and Thomas Daugharty, a police officer, met with Bailey and A.F. at school.  *Id.* ¶¶ 20, 22 (Page ID #32).  After asking Bailey and A.F. about the abuse and neglect, Acevedo and Daugharty informed Schattilly that Bailey and A.F. were being held at school and that Acevedo and Daugharty were also removing her other children from her care.  *Id.* ¶¶ 20, 22, 24 (Page ID #32).  Schattilly then signed a consent form agreeing to the temporary placement of all six children in a transitional living program.  *Id.* ¶ 26 (Page ID #33); R. 14-2 (Consent Form) (Page ID #222).

The next day, Williams and Acevedo met with Schattilly for a "Permanency Planning Conference." R. 6 (Am. Compl. ¶ 27) (Page ID #33). They told Schattilly that all six children could return home if Schattilly agreed to undergo counseling, which she did. *Id.* ¶ 29 (Page ID #33). But before all six children could leave the transitional living program, Daugharty, along with the two school counselors who first reached out to Children's Protective Services, pressured Bailey and A.F. to request permission to stay at the transitional living program. *Id.* ¶ 31 (Page ID #33). Only the four oldest children returned home. *See id.* ¶¶ 31–35 (Page ID #33–34). A week later, Acevedo filed a petition with the Family Division of the Saginaw County Circuit Court to remove Bailey and A.F. from Schattilly's care. *Id.* ¶ 35 (Page ID #34).

**B. Procedure**

Three years later, Schattilly filed suit in the United States District Court for the Eastern District of Michigan against Williams, Acevedo, Daugharty, and the two school counselors who first contacted Children's Protective Services. R. 1 (Compl.) (Page ID #1); R. 6 (Am. Compl.) (Page ID #30). Schattilly alleged that the defendants violated her First Amendment and Fourteenth Amendment "familial rights" by interviewing Bailey and A.F. at school, R. 6 (Am. Compl. ¶¶ 36–47) (Page ID #34–35), by taking all six children to the transitional living program, *id.* ¶¶ 48–60 (Page ID #35–37), and by pressuring Bailey and A.F. to stay with the program, *id.* ¶¶ 61–74 (Page ID #37–38). Schattilly sought damages of at least $25,000 for each claimed violation. *Id.* ¶¶ 47, 60, 74 (Page ID #35, 37, 38). Schattilly also alleged that Acevedo violated her First Amendment and Fourteenth Amendment rights by making false and misleading

statements in the petition Acevedo submitted to the Saginaw County Circuit Court. *Id.* ¶¶ 88–98

(Page ID #41–43). Schattilly objected to the following statements:

> [A.F.] and Bailey are made to work excessively in the yard, even during winter
> months in the early mornings and late nights that often makes Bailey fee [sic]
> dizzy and weak.
>
> [A.F.] and Bailey are not allowed to drink water from the kitchen or a cup and
> have to earn privileges to drink from the water hose.
>
> Alarms are set on the children's door to alert [Schattilly] if the children are
> entering the kitchen.
>
> [A.F.] and Bailey are not allowed to participate in school, family or social
> activities, but the remaining children are.
>
> [A.F.] and Bailey are only allowed to eat egg sandwiches and stalks of celery
> from home for school lunches and if they are found to eat the school lunch, they
> receive consequences.
>
> Baily [sic] is made to sleep in the laundry room on the floor in order to keep up
> with the laundry. There is an alarm on this door as well.
>
> Bailey and [A.F.] are made to dig a hole in the back yard to use the bathroom.
>
> [A.F.] and Bailey are made to wear the same clothes daily as [Schattilly] has
> packed their other clothes and advised them they need to earn them back.
>
> [A.F.] is made to wear men's boxer shorts to prevent her from stealing any food
> from school or the home.
>
> [Schattilly] disciplined Bailey . . . by striking him so hard with a paddle that it
> broke in half.
>
> [A.F.] has been physically disciplined by [Schattilly] leaving marks in the past.

*Id.* ¶ 90 (Page ID #41–42). Schattilly claimed that these false statements by Acevedo resulted in

the unlawful seizure of Bailey and A.F. and requested at least $25,000 for this claimed violation

4

as well. *Id.* ¶ 98 (Page ID #43). Finally, Schattilly sought a declaratory judgment that Mich. Comp. Laws § 722.628(8), the statute that authorized the state officials to interview Bailey and A.F. at school, violates the Fourth Amendment and the Fourteenth Amendment. *Id.* ¶¶ 75–87 (Page ID #39–41).

Williams and Acevedo filed a motion to dismiss for failure to state a claim arguing that they were entitled to qualified immunity for the alleged constitutional violations and that Acevedo was entitled to absolute immunity for the purportedly false and misleading statements in the petition. R. 11 (First Mot. to Dismiss at 3–11, 21–25) (Page ID #99–107, 117–21). They also argued that Schattilly did not have standing to seek a declaratory judgment that § 722.628(8) is unconstitutional. *Id.* at 11–14 (Page ID #107–10). The school counselors filed a separate motion to dismiss for failure to state a claim. R. 12 (Second Mot. to Dismiss) (Page ID #173). The district court referred the motions to a Magistrate Judge, who recommended that the district court grant them and terminate Williams, Acevedo, and the two school counselors from the case. R. 33 (First R. & R. at 1) (Page ID #428). Unpersuaded by Schattilly's objections, *see* R. 34 (First Objs.) (Page ID #446), the district court adopted the Magistrate Judge's recommendations,[1] R. 41 (First Dist. Ct. Op. at 19–20) (Page ID #552–53).

Daugharty filed a separate motion to dismiss arguing that he was also entitled to qualified immunity for the alleged constitutional violations. R. 37 (Third Mot. to Dismiss at 5–15) (Page

---

[1]Although the district court overruled nine of Schattilly's objections, it sustained the tenth, which concerned an alternative ground for one of the Magistrate Judge's recommendations. R. 41 (First Dist. Ct. Op. at 19) (Page ID #552). The district court declined to adopt that part of the Magistrate Judge's report. *Id.*

ID #488–98).  Although Daugharty had already answered Schattilly's complaint, the Magistrate Judge construed Daugharty's motion as a motion to dismiss under Rule 12(b)(6) and recommended the district court grant it.  R. 43 (Second R. & R. at 1) (Page ID #558).  Schattilly filed almost identical objections, R. 44 (Second Objs.) (Page ID #570), which the district court overruled, R. 46 (Second Dist. Ct. Op. at 17–18) (Page ID #605–06).  Then the district court, construing Daugharty's motion as a motion for judgment on the pleadings, adopted the Magistrate Judge's recommendations and dismissed Schattilly's complaint with prejudice.  *Id.* Schattilly timely appealed.  R. 48 (Notice of Appeal) (Page ID #608).  While the appeal was pending, Schattilly stipulated to the dismissal of the two school counselors.  6th Cir. Dkt. No. 27.

## II.  ANALYSIS

### A.  Qualified Immunity

Schattilly contends that Williams, Acevedo, and Daugharty violated her First Amendment and Fourteenth Amendment rights by interviewing Bailey and A.F. at school and by taking all six children to the transitional living program.  Appellant Br. at 27–50.  Schattilly has abandoned her argument that Daugharty violated her First Amendment and Fourteenth Amendment rights by pressuring Bailey and A.F. to stay at the transitional living program.  *See Robinson v. Jones*, 142 F.3d 905, 906 (6th Cir. 1998) (stating that arguments that are not specifically raised on appeal are considered abandoned and not reviewable).

Section 1983 creates a private right of action against officials who, under color of state law, deprive individuals of their statutory or constitutional rights.  42 U.S.C. § 1983.  Williams,

6

Acevedo, and Daugharty do not dispute that they were acting under color of state law at the time of the incident. Instead, they argue that they are entitled to qualified immunity. We agree.

"Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). These questions may be answered in any order, and if either one is answered in the negative, qualified immunity protects the officials from civil damages. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). Rather than determine whether the defendants violated Schattilly's constitutional rights, we hold that, at the time of the incident, the constitutional rights Schattilly claims that defendants violated were not clearly established.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (internal quotation marks and citations omitted). "In determining whether a right was clearly established, we look first to decisions of the Supreme Court, then to our own precedents, and then to decisions of other courts of appeal, and we ask whether these precedents 'placed the . . . constitutional

7

question beyond debate.'" *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (quoting *al-Kidd*, 563 U.S. at 741). The plaintiff bears the burden of showing that a right is clearly established. *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 681 (6th Cir. 2013). Schattilly has not met this burden with respect to either one of her claims.

With respect to her first claim, Schattilly has not identified any cases that support her contention that, in May 2011, it was clearly established that interviewing a juvenile about suspected parental abuse or neglect without parental consent violates a parent's First Amendment or Fourteenth Amendment rights. This is not surprising. First, these rights are typically grounded in the Fourteenth Amendment, not the First Amendment. *See, e.g.*, *Stanley v. Illinois*, 405 U.S. 645, 651 (1972) ("The integrity of the family unit has found protection in the Due Process Clause of the Fourteenth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and the Ninth Amendment." (internal citations omitted)). And second, we recently held that as of January 2011, this right—as it pertains to the Fourteenth Amendment—was *not* clearly established. *See Barber v. Miller*, 809 F.3d 840, 842 (6th Cir. 2015).

In *Barber v. Miller*, we considered a plaintiff's allegation that a social worker violated his Fourteenth Amendment rights by interviewing the plaintiff's son about suspected neglect without the plaintiff's consent. 809 F.3d 840, 842 (6th Cir. 2015). We held that the asserted constitutional right—the right of a parent to ensure that a state official does not interview the parent's child about potential neglect without the parent's consent—was not clearly established. *Id.* at 847. As we explained, none of the cases the plaintiff cited supported his assertion that

there was such a right, and our prior case law actually indicated the opposite. *Id.* Indeed, we had previously held that the "[m]ere investigation by authorities into child abuse allegations without more . . . does not infringe upon a parent's right to custody or control of a child" and that "the right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Kottmyer v. Maas*, 436 F.3d 684, 691 (6th Cir. 2006) (alteration omitted) (internal quotation marks omitted). Additionally, in an unpublished case, we held that, as of January 2010, it was not clearly established that interviewing a child in an abuse-and-neglect investigation without the parent's consent violated the parent's Fourteenth Amendment rights. *Brent v. Wenk*, 555 F. App'x 519, 530 (6th Cir. 2014).

Schattilly does not provide any bases on which to distinguish *Barber* or *Brent*, nor does she point to any developments in the law from January 2011 to May 2011 that would warrant a different conclusion. *See id.* at 527 (granting qualified immunity based on a prior case because the plaintiff "cite[d] no case that would indicate a change in this circuit's law between 2008 and 2010, when the events of [the] case took place"). Accordingly, we hold that officials do not violate clearly established First Amendment or Fourteenth Amendment rights by interviewing a child about suspected abuse or neglect by the parent without the parent's consent.

As for her second claim, Schattilly has not cited any cases holding that state officials violate a parent's First Amendment or Fourteenth Amendment rights by temporarily placing the parent's children in a transitional living program when the parent consents to the placement. Schattilly raises two arguments in an attempt to save her claim: (1) that the consent form that

she signed cannot be considered on a motion to dismiss or a motion for judgment on the pleadings and (2) that the defendants coerced her into signing the form by threatening to remove her children.

First, we have repeatedly held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (alteration omitted) (internal quotation marks omitted). Williams and Acevedo attached the consent form to their motion to dismiss, R. 14-2 (Consent Form) (Page ID #222); Schattilly referred to the form in her complaint, acknowledging that she "signed all of the children in to [the program]," R. 6 (Am. Compl. ¶ 26) (Page ID #33); and the form is central to her claim that the defendants violated her constitutional rights by removing the children. Thus, the form is part of the pleadings. Given that Schattilly's complaint explicitly states that she agreed to the temporary placement, however, it is unclear what difference consideration of the form makes.

Second, in her complaint, Schattilly states both that Acevedo and Daugharty told her that they would remove her children from her care and that Acevedo and Daugharty "ordered" her to sign the consent form. *Id.* ¶¶ 24, 26, 49 (Page ID #32, 33, 35). Although Schattilly does not connect these two statements in her complaint, she does connect them in her briefs below and on appeal, arguing that she signed the consent form only *because* defendants threatened to remove her children—in other words, that she was coerced. *See, e.g.*, R. 21 (Resp. to Mots. to Dismiss at 15–17) (Page ID #281–83); Appellant Br. at 39–41. But even granting Schattilly this inference,

she still cannot show that defendants violated clearly established rights. Schattilly has not identified any cases that support her contention that, in May 2011, it was clearly established that, by threatening removal proceedings to obtain consent to a temporary placement in a transitional living program, officials violate the First Amendment or the Fourteenth Amendment. Again this is not surprising, given that we have explicitly held that such action does *not* violate the Fourteenth Amendment. In *Smith v. Williams–Ash*, we considered the plaintiffs' claim that a social worker deprived them of their due-process right to a hearing by removing their children from their home. 520 F.3d 596, 597 (6th Cir. 2008). We held that there was no due-process violation, adopting the reasoning in *Dupuy v. Samuels*, 465 F.3d 757 (7th Cir. 2006). *Smith*, 520 F.3d at 599–600. *Dupuy*, like *Smith*, involved a challenge to the constitutionality of a voluntary safety plan. *Id.* *Dupuy* "held that when a parent voluntarily consents to a safety plan, 'no hearing of any kind is necessary,'" as "'hearings are required for deprivations taken over objection, not for steps authorized by consent.'" *Id.* at 600 (quoting *Dupuy*, 465 F.3d at 761–62). Although the plaintiffs in *Dupuy* argued that it is inherently coercive for officials to secure consent to these types of plans under the threat of removal proceedings, the court "found no fault in this strategy." *Id.* Analogizing this strategy to "a plaintiff's legitimate threat to press a case to trial in order to induce a defendant to settle," the *Dupuy* court explained that "'[i]t is not a forbidden means of coercing a settlement . . . to threaten merely to enforce one's legal rights.'" *Id.* (quoting *Dupuy*, 465 F.3d at 762). Schattilly does not attempt to distinguish *Smith*, nor does she cite any cases that would establish that officials violate a parent's First Amendment rights by

11

threatening removal proceedings in order to obtain consent to temporary placement. Accordingly, we hold that officials do not violate clearly established First Amendment or Fourteenth Amendment rights by threatening removal proceedings in order to secure parents' consent to the temporary placement of their children.

Because Schattilly has not met her burden of showing that the asserted rights are clearly established, we affirm the district court's grant of qualified immunity to Williams, Acevedo, and Daugharty for interviewing Bailey and A.F. at school and for taking all six of Schattilly's children to the transitional living program.

## B.  Absolute Immunity

Schattilly also contends that Acevedo violated her First Amendment and Fourteenth Amendment rights by making false and misleading statements in the petition Acevedo submitted to the Saginaw County Circuit Court.  Appellant Br. at 15–16.  Social workers are entitled to absolute immunity when, like prosecutors, "they are acting in their capacity as legal advocates." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc) (emphasis removed).  In *Pittman v. Cuyahoga County Department of Children & Family Services*, we held that this immunity includes social workers' statements in complaints or affidavits that they submit to courts—even if the statements are false or misleading.  640 F.3d 716, 724–25 (6th Cir. 2011).  We explained that, by filing complaints or affidavits, social workers are advocating for the health and well-being of children, and we have previously "recognized the need to allow [social workers] 'to perform the necessary tasks to achieve this goal without the worry of intimidation and

12

harassment from dissatisfied parents.'" *Id.* at 725 (quoting *Kurzawa v. Mueller,* 732 F.2d 1456, 1458 (6th Cir. 1984)). We recently reaffirmed *Pittman* in *Barber*, where we held that "[a] social worker acts as a legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under oath," and that "this absolute immunity holds, even under allegations that the social worker intentionally misrepresented facts to the family court." *Barber*, 809 F.3d at 844.

Schattilly recognizes that Acevedo is entitled to absolute immunity under *Pittman* and *Barber* but urges us to overturn both cases. We cannot. *See United States v. Elbe*, 774 F.3d 885, 891 (6th Cir. 2014) ("A panel of this court may not overturn binding precedent because a published prior panel decision 'remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision.'" (quoting *Salmi v. Sec'y of Health & Human Servs.*, 774 F.2d 685, 689 (6th Cir. 1985))). Thus, we affirm the district court's holding that Acevedo is entitled to absolute immunity for the allegedly false and misleading statements she made in the petition.

## C. Facial Challenge to Mich. Comp. Laws § 722.628(8)

Finally, Schattilly has waived her claim that Mich. Comp. Laws § 722.628(8) violates the First Amendment and Fourteenth Amendment. Other than asserting that "state statutes . . . cannot be construed to displace the protections of the United States Constitution" and analogizing § 722.628(8) to an Oregon statute discussed in a vacated Ninth Circuit opinion, Schattilly makes no arguments concerning the constitutionality of § 722.628(8) that we can

discern. Appellant Br. at 32–34; *see Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 602 (6th Cir. 2014) ("It is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration omitted) (internal quotation marks omitted)). Accordingly, her statutory claim is not reviewable. *Id.*

## III.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.