NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0253n.06

No. 17-3435

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

<table>
<tr><td>MONTY BAUCH, individually and as father and next friend of a minor, other O.B.; O.B., a minor,<br><br>    Plaintiffs-Appellees,<br><br>v.<br><br>RICHLAND COUNTY CHILDREN SERVICES; HOLLY HARTMAN, Individually and in her capacity as agent and/or employee of Richland County Children Services,<br><br>    Defendants-Appellants.</td><td>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)</td><td>ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF OHIO</td></tr>
</table>

**FILED**
May 23, 2018
DEBORAH S. HUNT, Clerk

Before: SILER and LARSEN, Circuit Judges; BLACK, District Judge.*

BLACK, District Judge. Defendant Holly Hartman ("Hartman") appeals from the judgment entered by the district court denying her motion for summary judgment on Count Four of Plaintiffs' complaint. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case to the district court for proceedings consistent with this opinion.

## I.    BACKGROUND

This case arises out of the 2011 removal of minor Plaintiff/Appellee O.B. from the home of her father, Plaintiff/Appellee Monty Bauch ("Bauch"), effectuated by Richland County

---

* The Honorable Timothy S. Black, United States District Judge for the Southern District of Ohio, sitting by designation.

Children Services ("RCCS"). O.B. was removed on Jan. 20, 2011 pursuant to an ex parte emergency order issued by an Ohio magistrate under Ohio Revised Code § 2151.31(D) and (E) and Ohio Juvenile Rule 6(B).[1] Pursuant to statute, a hearing was held the next day. Upon consideration of the evidence presented at the hearing, the juvenile court found that there was probable cause for the issuance of the emergency order, that RCCS had made reasonable efforts to prevent O.B.'s removal, and that it would be "contrary to the child's best interest and welfare" to continue living with Bauch at that time. Over the next two years, Bauch worked with RCCS and the juvenile court toward the completion of his case plan, eventually regaining permanent custody of O.B. in December 2013.

Bauch filed suit in federal district court a year after he regained custody of O.B. Bauch's second amended complaint stated fourteen causes of action. The only count relevant to this appeal is Count Four, which alleges that the individual defendants named in the complaint

> conspired to interfere with and violate the civil rights of the Plaintiffs, as set forth under 42 U.S.C. § 1983, *including violation of the Plaintiffs' rights found in the First, Fourth and Fourteenth Amendments of the United States Constitution*, by, but not limited to, acting and conspiring to force Plaintiff Mr. Bauch to relent to their demands, by retaliating against Plaintiffs for the exercise of his constitutional freedoms and *by removing, detaining and continuing to detain, the person and/or physical and legal custody of minors* [sic] *Plaintiff O.B. from the care, custody, and control of her parents*, without proper or just cause and/or authority; by the use of intimidation, coercion and duress*, and by using false and fabricated evidence and testimony*, and failing to provide exculpatory evidence, during the investigation and initiation and pendency of the abuse and dependency proceedings, *including the application for a valid warrant for the removal of O.B.*, in violation of, and interference with, the Plaintiffs' constitutional liberty interests under the First Amendment, their fundamental rights to familial

---

[1] Section 2151.31(D) provides that "a juvenile judge or a designated referee may grant by telephone an ex parte emergency order authorizing the taking of [a] child into custody if there is probable cause to believe that" certain specified conditions are present. Section 2151.31(E) and Ohio Juvenile Rule of Procedure 6(B) mandate that "the court shall hold a hearing to determine whether there is probable cause for the emergency order . . . before the end of the next business day" and no later than seventy-two hours after such an order is issued.

association and due process under the Fourteenth Amendment, *and in violation of Fourth Amendment rights against unreasonable searches and seizures*.

The only Defendant relevant to this appeal is Hartman, a licensed social worker and caseworker supervisor employed by RCCS, who supervised the initial RCCS investigation of Bauch. Hartman moved to secure the initial emergency ex parte custody order from the magistrate on Jan. 20, 2011. In so doing, Hartman prepared an affidavit in support of emergency custody detailing the reasons RCCS was seeking removal. In that affidavit, Hartman stated that O.B. was an "abused" child under Ohio Rev. Code § 2151, that reasonable efforts had been made to avoid removal, and that removal was in O.B.'s best interest. Bauch alleges that Hartman knowingly omitted pertinent information and included false information when completing the affidavit, leading to O.B.'s improper removal and the denial of Plaintiffs' constitutional rights.

All parties filed motions for summary judgment before the district court. Hartman argued that the claims against her in her individual capacity were barred by both absolute immunity and qualified immunity. The district court rejected these immunity claims and denied Hartman summary judgment on Count Four. First, the district court stated, without further explanation, that Hartman was not shielded by absolute immunity for the act of vouching for the truth of the facts she presented in her affidavit in support of emergency custody. Second, the district court determined that qualified immunity was inappropriate because a jury had to decide whether Hartman's "omissions and rushed misrepresentations . . . would weigh significantly into the magistrate's decision to issue an order removing a child . . . and whether Hartman . . . had the intention to mislead[.]"

## II. STANDARD OF REVIEW

The only question before this Court on appeal is whether the district court erred by denying Hartman's claims of absolute and qualified immunity. "Whether a defendant is entitled

to absolute or qualified immunity from liability under 42 U.S.C. § 1983 is a legal question that this Court reviews *de novo*." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009).[2]

### III.  ANALYSIS

#### A.  Absolute Immunity

Hartman argues that she is entitled to absolute immunity from prosecution resulting from her statements in the affidavit in support of emergency custody. In certain circumstances, social workers are "entitled to absolute immunity." *Holloway v. Brush*, 220 F.3d 767, 774 (6th Cir. 2000) (en banc). "The scope of this immunity is akin to the scope of absolute prosecutorial immunity, which applies to conduct 'intimately associated with the judicial phase of the criminal process.'" *Pittman v. Cuyahoga Cty. Dep't. of Children & Family Servs.*, 640 F.3d 716, 724 (6th Cir. 2011) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Accordingly, "social workers are absolutely immune only when they are acting in their capacity as *legal advocates*— initiating court actions or testifying under oath—not when they are performing administrative, investigative, or other functions." *Holloway*, 220 F.3d at 775. The central dispute over absolute immunity therefore concerns whether Hartman was acting in her capacity as a legal advocate when she completed and submitted her affidavit in support of emergency custody. As the party seeking absolute immunity, Hartman has the burden of demonstrating that the immunity is justified for the function being challenged. *Moldowan*, 578 F.3d at 376.

---

[2] In addition to Defendants' appeal, currently pending before this Court is Plaintiffs' motion to dismiss, which argues that the district court's denial of immunity to Hartman was not a "final decision" subject to appeal. However, the Court in *Ortiz v. Jordan* explained that "immediate appeal from the denial of summary judgment on a qualified immunity plea is available when the appeal presents a 'purely legal issue,' illustratively, the determination of 'what law was "clearly established"' at the time the defendant acted[.]" *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) (quoting *Johnson v. Jones*, 515 U.S. 304, 313 (1995)). The question of whether Hartman is entitled to absolute immunity is purely a legal one, and we accordingly deny Plaintiffs' motion to dismiss.

The district court held that Hartman was not acting as a legal advocate in completing the affidavit in support of emergency custody, relying primarily on this Court's previous unpublished decision in *Young v. Vega*, 574 F. App'x 684, 689 (6th Cir. 2014). In *Young*, a father filed a § 1983 action against a Tennessee social worker alleging that the social worker violated the plaintiff's Fourteenth Amendment due process rights by including false statements in a petition for the immediate removal of a child and causing the juvenile court to issue an ex parte removal order without probable cause. *Id.* at 687, 691. This Court granted the social worker qualified immunity but denied absolute immunity. *Id.* at 689, 694. In reaching its conclusion, this Court determined that the social worker was not entitled to absolute immunity for "the act of personally vouching for the truth of the facts that provide the evidentiary support for a finding of probable cause." *Id.* at 689.

This Court reached its conclusion in *Young* by applying the Supreme Court's reasoning in *Kalina v. Fletcher*, 522 U.S. 118 (1997), a case involving a prosecutor's actions, to the social worker context. 574 F. App'x at 689.[3] In *Kalina*, a prosecutor contemporaneously filed three documents in a criminal prosecution—an information charging respondent with burglary, a motion for an arrest warrant, and an affidavit supporting the issuance of the arrest warrant. 522 U.S. at 121. The Court granted absolute immunity for the first two documents, but denied absolute immunity for the affidavit that was given in support of the arrest warrant because the prosecutor was not functioning as "an advocate for the State" when she submitted that affidavit. *Id.* at 126 (citation omitted). Therefore, the prosecutor had stepped into the role of a fact witness by attesting to the truth of facts supporting the warrant. *Id.* at 130. Thus, *Kalina* confirms that officials who serve as complaining witnesses receive qualified, not absolute, immunity. *See also*

---

[3] This Court looks to the scope of prosecutorial immunity to determine the scope of social worker immunity. *Holloway*, 220 F.3d at 774.

*Malley v. Briggs*, 475 U.S. 335, 340 (1986) (stating that "complaining witnesses were not absolutely immune at common law"); *Vakilian v. Shaw*, 335 F.3d 509, 513 (6th Cir. 2003) (an investigator can be held liable under § 1983 for making material false statements either knowingly or recklessly to establish probable cause for arrest). Bauch argues that Hartman's affidavit in support of emergency custody is analogous to the affidavits at issue in *Kalina*, *Malley*, and *Vakilian* because, for purposes of the affidavit, Hartman was acting not as an advocate but as a witness testifying to the truth of her factual assertions regarding Bauch and O.B.

However, multiple decisions of this Court, issued after both *Young* and *Kalina* were decided, have held in situations analogous to this case that the submission of an affidavit that triggers judicial child-removal proceedings is in fact an act of legal advocacy by social workers. In *Barber v. Miller*, 809 F.3d 840 (6th Cir. 2015), a father contended that a social worker included falsehoods and misrepresentations in a petition for protective custody in order to obtain an ex parte order for immediate removal pending a hearing.[4] *Id.* at 843. This Court granted the social worker absolute immunity against those allegations because the social worker "offered his factual assessment in his capacity as a legal advocate initiating a child-custody proceeding in family court." *Id.* at 843–44. In so doing, this Court held that "[a] social worker acts as a legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under oath," and that "this absolute immunity holds, even under allegations that the social worker intentionally misrepresented facts to the family court." *Id.* at 844; *see also Schattilly v.*

---

[4] The social worker sought a protective custody order pursuant to Mich. Comp. Laws §§ 712A.14b and 722.638. *Barber*, 809 F.3d at 843. Mich. Comp. Laws § 712A.14b, similar to Ohio Rev. Code § 2151.31(D), authorizes "a judge or referee," "[u]pon receipt electronically or otherwise of a petition or affidavit of facts," to "issue a written ex parte order . . . authorizing the department of human services to immediately take a child into protective custody and place the child pending the preliminary hearing if the court finds" that the specified conditions are present.

*Daugharty*, 656 F. App'x 123, 135 (6th Cir. 2016) ("[Absolute] immunity includes social workers' statements in complaints or affidavits that they submit to courts—even if the statements are false or misleading." (citing *Pittman*, 640 F.3d at 724–25)).

The district court did not address how *Barber* or *Schattilly* affect the analysis of absolute immunity in the present case. We concur with the analysis of these two cases. Like the social worker's petition in *Barber*, Hartman's affidavit offered her factual assessment as a legal advocate initiating a child-custody proceeding. *See Barber*, 809 F.3d at 843–44. Unlike a police officer's application for a search warrant, Hartman's affidavit for emergency custody necessarily triggered a subsequent custody proceeding in court pursuant to Ohio law. The Ohio Revised Code states that

> If a judge or referee pursuant to division (D) of this section issues an ex parte emergency order for taking a child into custody, *the court shall hold a hearing to determine whether there is probable cause for the emergency order.* The hearing shall be held before the end of the next business day after the day on which the emergency order is issued, except that it shall not be held later than seventy-two hours after the emergency order is issued.

Ohio Rev. Code § 2151.31(E) (emphasis added). Accordingly, Hartman's actions were more analogous to a prosecutor's decision to prosecute than a police officer's testifying by affidavit in support of probable cause. This case is also distinguishable from the facts of *Kalina*—although the affidavit submitted by the prosecutor in *Kalina* was "filed as part of an *ex parte* process prior to the indictment that begins the criminal case," Hartman's affidavit in support of emergency custody was "an undeniable part of the judicial process" because "the [affidavit] initiated the [removal] action" and subsequent hearing. *Gray v. Poole*, 275 F.3d 1113, 1118 (D.C. Cir. 2002).

Absolute immunity represents "a balance between . . . evils," as "it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation." *Gregoire v. Biddle*, 177 F.2d 579,

581 (2d Cir. 1949). Weighing this balance in the case of child advocates such as Hartman demonstrates the clear need to provide that same heightened protection to children's services advocates charged with determining whether to initiate child-removal proceedings. *See Pittman*, 640 F.3d at 725–26 (explaining the necessity of extending absolute immunity to social workers). Nearly every instance in which a children's services advocate must act to remove a child from his or her home promises to be contentious and emotionally charged. If absolute immunity were denied to these advocates, a flood of litigation against individual advocates would follow as parents challenged the factual assertions of each affidavit in support of emergency custody. *See Barber*, 809 F.3d at 843 (explaining that absolute immunity is necessary to "enable[] social workers to 'protect the health and well-being of the children . . . without the worry of intimidation and harassment from dissatisfied parents'" (citation omitted)). This in turn could negatively affect children's services in the future, as advocates, fearing individual reprisal, might fail to act expediently in situations where a child's welfare is at risk. Just as absolute immunity is essential for prosecutors engaged in legal advocacy because "any lesser degree of immunity could impair the judicial process itself," *Malley*, 475 U.S. at 342, that same immunity must be given to a children's services advocate as the initiator of home-removal actions; any lesser protection would jeopardize the essential process that has been established to provide protection to those children who need it most.

Accordingly, Hartman is entitled to absolute immunity for claims related to her affidavit in support of emergency custody.

### B. Qualified Immunity

We have held that Defendant/Appellant Holly Hartman is entitled to absolute immunity from claims arising from her affidavit in support of emergency custody. This defeats all

Plaintiffs' claims against Hartman that are before us on appeal. Accordingly, we need not, and shall not, review the district court's determination regarding Hartman's assertion that she is also entitled to qualified immunity from Plaintiffs' claims.

## IV.  CONCLUSION

As this Court properly has jurisdiction over Defendants' appeal, Plaintiffs' motion to dismiss the appeal is **DENIED**. Furthermore, we conclude that the district court erred in holding that Defendant/Appellant Holly Hartman was not entitled to absolute immunity in this case. We therefore **REVERSE** the judgment of the district court and **REMAND** this case to the district court for proceedings consistent with this opinion.