**NOT RECOMMENDED FOR PUBLICATION**
File Name: 21a0029n.06

Case No. 20-5216

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 13, 2021
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| VICTORIA CUNNINGHAM, Individually and as Next Friend for A.C. (a minor child), | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE |
| v. | ) ) | |
| DEPARTMENT OF CHILDREN'S SERVICES, et al., | ) ) ) | |
| Defendants-Appellees. | ) | |

BEFORE: ROGERS, DONALD, and BUSH, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** Victoria Cunningham raises various constitutional claims related to a Tennessee county juvenile court judge's issuance of an ex parte order requiring her to seek professional psychological services and imposing limits on her interactions with her child. She filed suit under 42 U.S.C. § 1983 against the judge, prosecutor, and family service worker involved in the preparation and service of the order. The district court granted Defendants' motions to dismiss Cunningham's claims. For the reasons below, we AFFIRM the district court's decision.

I.

Plaintiff-Appellant Victoria Cunningham ("Cunningham") is the mother of A.C., one of her two minor children. On June 7, 2019, the Tennessee Department of Children's Services

("DCS") received a report that A.C.'s father had sexually abused her. A.C. was living in Rutherford County when the alleged sexual abuse took place. On the same day, Cunningham temporarily separated from her husband in Rutherford County and took her children to the home of her mother, Connie Reguli ("Reguli"), in Williamson County.

On June 8, 2019, a police detective contacted Cunningham and stated that he wanted to meet with her regarding A.C. Reguli later spoke with the detective, and "the understanding was that DCS would be following up." (R. 38 at PageID 214). Upon receiving the referral of alleged sexual abuse, DCS Investigator Tameika Gray ("Gray") contacted Cunningham and discussed the allegations with her. Gray informed Cunningham that DCS would need to conduct a face-to-face interview with the minor A.C. Cunningham, however, stipulated that she would not allow that interview to occur without Reguli's being present. Gray then contacted Reguli, and after a brief conversation, Reguli agreed to bring A.C. to see Gray the following day.

On June 11, 2019, Reguli brought the two children to meet Gray at the Rutherford County DCS office. Reguli declined Gray's request to meet with A.C. privately, and informed Gray that "an appointment had previously been set for June 13, 2019 for A.C. to meet with psychologist Dr. Janie Berryman and that it was the desire of [Cunningham] that A.C. meet with the psychologist prior to any other forensic interviews." (R. 38 at PageID 215).

Gray subsequently submitted a verified application to the Rutherford County Juvenile Court a verified application, which asserted that the report of harm to A.C. involved "allegations of sexual abuse [by the child's father] John Cunningham." (R. 38-6 at PageID 261-65). On June 12, 2019, the juvenile court—through Defendant-Appellee Matthew Wright ("Wright"), a DCS attorney, and Defendant-Appellee Donna Davenport ("Davenport"), a state court judge—issued an ex parte order. The order stated that DCS had received a report of harm concerning A.C. and

had "been unable to complete its investigation due to the actions of the Mother, Victoria Cunningham, and Maternal Grandmother, Ms. Connie Reguli." (R. 38-4 at PageID 255).

The ex parte order required, *inter alia*, that Cunningham and Reguli allow DCS to enter the home or place where A.C. was located for the purposes of an examination and/or to complete its investigation; allow DCS to conduct a face-to-face interview with A.C. outside of their presence and outside of the presence of other third parties; and allow A.C. to be forensically interviewed by representatives of the Child Advocacy Center ("CAC"). The order also allowed DCS to take temporary custody of A.C. if necessary to complete the investigation. On June 12, 2019, Gray went to Reguli's home. Thinking Gray was there to inspect the home, Reguli invited Gray into the home and introduced her to Cunningham. Gray stated that she was not there for a home visit; instead, she served Reguli with the ex parte order.

On June 14, 2019, Cunningham filed an action under 42 U.S.C. § 1983 in the district court, asserting claims against Davenport, Gray, and Wright (collectively "Defendants") for violations of the Fourth, Ninth, and Fourteenth Amendments. Proceedings in the juvenile court continued, and after holding a hearing on August 30, 2019, the juvenile court issued a final order on September 3, 2019, ruling, *inter alia*, that DCS was authorized to speak with A.C., view the home in which A.C. resided, and conduct a CAC interview of the child.[1]

Cunningham then filed an Amended Complaint in the district court in which she alleges that "the deceptive, and false preparation, execution, and service of the Ex Parte Order" violated: (1) her right to parent her child; (2) her substantive and procedural due process rights; and (3) A.C.'s right to be free from unreasonable search and seizure. (R. 38 at PageID 225-26).

---

[1] On motion of DCS, the juvenile court issued a slightly amended final order on September 27, 2019 (R. 56-2 at PageID 422), which is currently on appeal.

Cunningham also claims that Gray, Wright, and Davenport acted in concert and could not have accomplished these alleged violations without the overt acts of one another.

On January 23, 2020, the district court dismissed all of Cunningham's claims, concluding that the *Rooker-Feldman* doctrine barred all claims against Davenport, Gray, and Wright that were based on the ex parte order. The district court alternatively held that even if *Rooker-Feldman* did not preclude the district court's subject matter jurisdiction, Davenport, Gray, and Wright were each entitled to immunity for any claims in which the ex parte order was the source of the alleged constitutional violations—judicial immunity for Davenport, prosecutorial immunity for Wright, and social worker immunity for Gray. The district court also dismissed Cunningham's remaining claims against Gray and Wright—that they made false statements in the verified application for the ex parte order—concluding that Gray and Wright were entitled to absolute immunity for that conduct. To the extent that Cunningham based her claims on Gray's and Wright's *execution* of the ex parte order and not the petition for it, and assuming the Amended Complaint adequately alleged such a claim, the district court concluded that Gray and Wright enjoyed qualified immunity. Finally, in an abundance of caution, the district court dismissed—in a footnote—any claim that Cunningham might have brought for conspiracy under 42 U.S.C. § 1985.[2]

This appeal followed.

---

[2] Although the district court was uncertain as to whether Cunningham actually attempted to assert a conspiracy claim against Defendants, it noted as follows:

> The Amended Complaint is not a model of clarity, and thus, the Court has struggled to identify the conduct underlying each of the claims. Plaintiff cites 42 U.S.C. § 1985 in the introduction to her Amended Complaint, but the factual allegations regarding any alleged conspiracy appear to focus on the issuance of the *Ex Parte* Order. As such, the conspiracy claim would be barred by *Rooker Feldman.* To the extent Plaintiff sought to allege the defendants engaged in a conspiracy independent of the *Ex Parte* Order, that conduct is not described in the factual allegations, and therefore, such a claim is dismissed as inadequately pled. Fed. R. Civ. P. 8(a).

(R. 73 at PageID 560 n.4) (citation omitted). Cunningham does not challenge the district court's ruling on this issue, so we do not discuss it further.

II.

On appeal from a grant of a Rule 12(b)(6) motion to dismiss, we review the district court's decision *de novo*, construing the complaint in the light most favorable to the plaintiff. *See Theile v. Michigan*, 891 F.3d 240, 243 (6th Cir. 2018); *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007). For a plaintiff's claim to survive a motion to dismiss, the plaintiff must present a facially plausible complaint that asserts more than bare legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). When reviewing a plaintiff's claim, we accept as true all factual allegations, but not "legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)).

III.

We begin by addressing the district court's jurisdiction. Under the *Rooker-Feldman* doctrine, district courts may not consider "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). The doctrine is derived from 28 U.S.C. § 1257, which "vests sole jurisdiction" to "conduct[] appellate review of final state-court judgments" in the Supreme Court. *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012).

"We determine whether *Rooker-Feldman* bars a claim by looking to the 'source of the injury the plaintiff alleges in the federal complaint.' If the source of the plaintiff's injury is the state-court judgment itself, then *Rooker-Feldman* applies." *VanderKodde v. Mary Jane M. Elliott, P.C.*, 951 F.3d 397, 402 (6th Cir. 2020) (quoting *McCormick v. Braverman*, 451 F.3d 382, 393

(6th Cir. 2006)). To determine the source of a plaintiff's injury, a court must look to the requested relief. *Id.*

We faced a similar situation in *Reguli v. Guffee*, 371 F. App'x 590, 595-96 (6th Cir. 2010), where the plaintiff, like Cunningham, alleged two categories of injuries—those stemming from an ex parte order itself and those stemming from the defendants' conduct in the *preparation and issuance* of the order. In *Reguli*, we concluded that *Rooker-Feldman* barred consideration of the first category of injuries, because they were based on "allegations [that were] a direct result of the judicial order and fail[ed] to assert an 'independent claim' that would bring the case outside the ambit of *Rooker-Feldman*." *Id.* at 596.

As in *Reguli*, *Rooker-Feldman* barred the district court's consideration of Cunningham's claims to the extent that the ex parte order was the main source of her injury. In other words, *Rooker-Feldman* prevented the district court from reviewing or otherwise addressing any aspect of the contents of the ex parte order. That would include Cunningham's claim that Davenport violated the Constitution by acting outside of the juvenile court's jurisdiction. *See id.* at 597 ("Even if issued without jurisdiction the [ex parte] order was still issued by a state court, and *Rooker-Feldman* bars a federal court from reviewing the constitutionality of that order.")

But Cunningham, like the plaintiff in *Reguli*, also makes several allegations against Defendants based on their conduct *leading up* to the issuance of the ex parte order and executing that order. *Rooker-Feldman* does not deprive us of jurisdiction to address *those* claims. *See Kovacic v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 606 F.3d 301, 310 (6th Cir. 2010) (drawing similar distinction and noting that *Rooker-Feldman* did not apply to the plaintiffs' claims that "focus[ed] on the conduct of Family Services and of the social workers *that led up to* the

juvenile court's decision[.]") (emphasis in original). However, for the reasons explained below, Cunningham's claims are still subject to dismissal, because each Defendant is immune from suit.

IV.

First, to the extent that Cunningham challenges Davenport's actions as leading up to the issuance of the ex parte order and not the issuance itself, we affirm the district court's finding that Davenport is entitled to judicial immunity. Cunningham argues against the application of judicial immunity because, according to her, the Rutherford County juvenile court—and, by extension, Davenport—lacked jurisdiction to issue the ex parte order. Cunningham's argument focuses on the fact that she and A.C. resided in Williamson County during the proceedings, thus making Rutherford County an improper venue. However, we agree with the district court's conclusion that Tennessee law provided Davenport with jurisdiction over proceedings involving "delinquent, unruly or dependent and neglected" children, and that, to the extent that venue might have been improper in Rutherford County, there were no indications that Davenport acted in the "complete absence of all jurisdiction." (R. 73 at PageID 562-63).

It is a well-settled principle in our system of jurisprudence that judges are generally absolutely immune from civil actions for money damages. *Bright v. Gallia County*, 753 F.3d 639, 648 (6th Cir. 2014). Absolute judicial immunity can be overcome only in two instances: (1) non-judicial actions, i.e., actions not taken in the judge's judicial capacity; and (2) actions taken in the complete absence of jurisdiction. *Id*. at 649. Cunningham does not argue that Davenport acted outside of her judicial capacity. Thus, we look only to the second exception to determine whether judicial immunity applies.

The term "jurisdiction" is to be broadly construed to effectuate the purposes of judicial immunity. *Id*. A judge will not be deprived of judicial immunity because the action she took was

in error, was done maliciously, or was in excess of her authority; rather, she will be subject to liability only when she has acted in the clear absence of all jurisdiction." *Savoie v. Martin*, 673 F.3d 488, 492 (6th Cir. 2012) (citing *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)). Only in the absence of subject matter jurisdiction are judicial actors devoid of the shield of immunity. *Leech v. DeWeese*, 689 F.3d 538, 542 (6th Cir. 2012).

> As we recently stated in *Norfleet v. Renner*, 924 F.3d 317, 319 (6th Cir. 2019):
>
> > The line between the category of actions that protects [the judge] (acting in excess of jurisdiction) and the category that does not (acting in the complete absence of jurisdiction) is not self-revealing. Two illustrations come to mind. If a judge with general criminal jurisdiction ruled that an act amounted to a crime when it did not, he would merely act in excess of jurisdiction and thus be immune from a § 1983 lawsuit challenging his decision. But if a probate judge assumed authority over a criminal case, the judge would act in the clear absence of jurisdiction because he "is invested only with authority over wills and the settlement of estates of deceased persons."

(internal citations omitted) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 352 (1871)).

Here, the verified petition stated that there was reason to believe that A.C. was dependent and neglected based on allegations that her father had sexually abused her. These allegations undoubtedly triggered the subject matter jurisdiction conferred upon Tennessee juvenile courts by Tenn. Code Ann. § 37-1-103, which provides, in relevant part:

> (a) The juvenile court has exclusive original jurisdiction of the following proceedings, which are governed by this part:
>
> > (1) Proceedings in which a child is alleged to be delinquent, unruly or dependent and neglected . . . .

While it is true that Tenn. Code Ann. § 37-1-103(a)(1) does not explicitly *grant* juvenile courts jurisdiction over matters involving out-of-county children, the statute also does not explicitly prohibit such jurisdiction, and the latter is our primary concern in determining whether the "complete absence of any jurisdiction" exception to judicial immunity applies. *See Mills v.*

*Killebrew,* 765 F.2d 69, 71 (6th Cir. 1985) ("A judicial officer acts in the clear absence of jurisdiction only if he knows that he lacks jurisdiction, or acts despite a *clearly valid statute or case law expressly depriving him of jurisdiction*.") (emphasis added)). Cunningham has not provided the Court with any Tennessee statute or case law that would have expressly deprived Davenport of jurisdiction to issue an ex parte order regarding this matter. To the extent that Davenport may have committed error by finding venue to be proper, it was merely procedural error, which is protected by judicial immunity. *See Stern v. Mascio*, 262 F.3d 600, 607 (6th Cir. 2001) ("Even grave procedural errors or acts taken when no statute purports to confer on the court the authority purportedly exercised will not deprive a judge of judicial immunity."); *see also Ireland v. Tunis*, 113 F.3d 1435, 1441 (6th Cir. 1997). At most, Davenport acted in excess of jurisdiction rather than in the clear absence of jurisdiction.[3] Accordingly, Davenport was entitled to absolute judicial immunity.

V.

Next, we affirm the district court's determination that prosecutorial immunity protects Wright from Cunningham's claims stemming from the ex parte order. The Supreme Court has extended absolute immunity to prosecutors from a suit for damages under Section 1983 when the activity involved is "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). As this Court has summarized:

---

[3] Although we will leave it to the Tennessee Supreme Court to determine whether the jurisdictional limitation advocated by Cunningham actually exists, we note that a definitive ruling on that issue would not change our determination of the application of judicial immunity in this particular case. Tenn. Code Ann. § 37-1-103(d)(1)-(2) provides that "[a] juvenile court in *any* county of this state shall have temporary jurisdiction to issue temporary orders pursuant to this section upon a petition on behalf of a child *present or residing* in that county . . . only in a neglect, dependency or abuse proceeding[]." (emphasis added). Here, although Cunningham and A.C. had relocated to Williamson County by the time Davenport issued the ex parte order, the facts—as alleged—indicate that they did so only *temporarily* (R. 38 at PageID 214), meaning that they had not relinquished their residence in Rutherford County, where the underlying abuse was alleged to have occurred. Thus, even if venue would have otherwise been improper in Rutherford County, Davenport had the authority to assert temporary jurisdiction over the matter.

> [A]s the doctrine has emerged, absolute prosecutorial immunity protects only those acts falling within a prosecutor's role as advocate for the state and intimately associated with the judicial process, and not for administrative or investigative acts antecedent or extraneous to the judicial process. Investigative acts undertaken in direct preparation of judicial proceedings, including the professional evaluation of evidence, warrant absolute immunity, whereas other acts, such as the preliminary gathering of evidence that may ripen into a prosecution, are too attenuated to the judicial process to afford absolute protection.

*Ireland*, 113 F.3d at 1445 (citing *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)).

Cunningham argues that prosecutorial immunity does not apply for three reasons, none of which has merit. First, Cunningham argues that Wright "provided false and misleading information to the [juvenile] court to obtain ex parte authority over [Cunningham]." (Appellant Br. at 26). However, aside from this conclusory assertion, Cunningham fails to set forth any specific allegations to support this claim. Suffice it to say, however, Cunningham's overall allegations suggest that whatever Wright did, he did so in the course of representing the state of Tennessee during juvenile court proceedings and as an advocate for the state.

Second, Cunningham argues that our recent decision in *Rieves v. Town of Smyrna*, 959 F.3d 678 (6th Cir. 2020) supports her position that absolute immunity does not apply to Wright. In *Rieves*, we held that prosecutors did not enjoy absolute immunity for engaging in the practice of advising law enforcement officers. *Id.* at 692. However, we did so on narrow grounds, explaining that immunity was lacking because the prosecutors' conduct "occurred prior to the initiation of judicial proceedings and without probable cause." *Id.* Ultimately, we determined that the prosecutors in that case were not acting as legal *advocates* but, instead, were functioning as investigators *aiding law enforcement officers* rather than the judicial process. *Id.* at 694. Here, Cunningham has made no allegations that Wright took any action in a manner that was outside of the judicial process. The only specific allegations Cunningham makes against Wright are that he assisted in the preparation of the verified application and then signed it. Cunningham has neither

demonstrated nor even argued how Wright's actions were outside of those typically associated with a family court attorney. Accordingly, *Rieves* is inapplicable and does not undermine Wright's enjoyment of prosecutorial immunity.

Third, Cunningham argues that the same jurisdictional limitations that she believed applied to Davenport's jurisdiction to issue the ex parte order also applied to Wright. To that end, Cunningham argues that Wright knew or should have known that Tennessee Code Ann. §§ 37-5-512(b), 37-1-406(e), and 37-1-111 did not "g[i]ve him jurisdiction over [Cunningham] nor her child." (Appellant Br. at 28). However, as explained above, the absence of an *express grant* of jurisdiction is not equivalent to a *clear deprivation* of jurisdiction, and even if Wright had prepared and signed the verified application in a court that lacked proper venue—an issue which, again, we do not opine—"the general nature of [Wright's actions] is part of the normal duties of a prosecutor." *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 640 F.3d 716, 725 (6th Cir. 2011) (quoting *Cady v. Arenac Cnty.*, 574 F.3d 334, 340 (6th Cir. 2009)).

For these reasons, Wright was entitled to absolute immunity for any injuries Cunningham may have suffered by way of the ex parte order itself or by Wright's actions in the preparation and signing of the verified complaint.

VI.

Cunningham also argues that the district court erred in granting Gray absolute immunity. Social workers, like prosecutors and probation officers, enjoy absolute immunity when they engage in conduct "intimately associated with the judicial process." *Id.* This means that "[s]ocial workers are absolutely immune only when they are acting in their capacity as *legal advocates*." *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) (en banc). "A social worker acts as a legal advocate when initiating court proceedings, filing child-abuse complaints, and testifying under

oath," *Barber v. Miller*, 809 F.3d 840, 844 (6th Cir. 2015), but not when "perform[ing] administrative, investigative, or other functions; for example, when they give legal advice to the police, hold a press conference, or fabricate evidence." *Holloway*, 220 F.3d at 774-75.

Social workers enjoy broad immunity—ranging from immunity not only for negligent misrepresentations to the court, *see Rippy ex rel. Rippy v. Hattaway*, 270 F.3d 416, 422-23 (6th Cir. 2001), but to knowing and intentional misrepresentations as well. *Barber*, 809 F.3d at 844. Even though we have held that the investigative and administrative acts of social workers are not entitled to absolute immunity, we have defined those actions quite narrowly—holding, for example, that a plaintiff cannot recover against a social worker for her alleged failure to "properly investigate" the facts supporting a petition for removal. *Pittman*, 640 F.3d at 726. We have also granted a social worker immunity from claims that she could have facilitated the return of a removed child "had [she] performed an adequate investigation at *any time*" between issuance of an initial removal order and the ultimate juvenile dependency hearing. *Rippy*, 270 F.3d at 422 (emphasis added).

These principles control the claims against Gray. Most of Cunningham's accusations against Gray are based on the same conduct that underpin Cunningham's claims against Wright. The claims against Gray are based solely on her alleged representations in preparing the verified application for submission to the juvenile court. Cunningham argues that Gray "provided false and misleading information to the [juvenile] court to obtain ex parte authority over [Cunningham]." (Appellant Br. at 26). Cunningham's specific accusations against Gray are scattered and admittedly challenging for the Court to read, but, as best the Court can decipher, Cunningham alleges that: (1) Gray falsely stated that Reguli refused to have A.C. participate in a forensic interview; (2) Gray falsely informed Reguli that "if the forensic interview [was] not done

by the CAC or conform[ed] to the CAC model that it would hinder law enforcement"; (3) Gray falsely stated that the juvenile court had jurisdiction under Tennessee Code Ann. §§ 37-5-512(b) and 37-1-103; and (4) that Gray was not authorized by Tennessee law to conduct an investigation of A.C. (R. 38 at PageID 222-35).

As an initial matter, Cunningham has not meaningfully contradicted any of the facts alleged by Gray in the verified application. Thus, it is not apparent that any potential falsehoods—whether negligent or intentional—formed the basis for the ex parte order. More importantly, Gray's actions—as alleged by Cunningham—are entirely consistent with those in which we have in the past found social worker immunity. We have explained that the function of making recommendations to the juvenile court "*including the underlying investigation*, is . . . intimately related to the judicial phase of child custody proceedings and therefore protected by absolute immunity." *Pittman*, 640 F.3d at 726 (citation and internal quotation marks omitted) (emphasis in original). While it is obvious that Cunningham is dissatisfied with the process, she has made no assertions to suggest that Gray, in procuring the verified application, was acting in any role other than as a child protective service investigator pursuing an investigation that was part of a juvenile court proceeding. Accordingly, Gray was entitled to social worker immunity.

## VII.

The district court also granted Wright and Gray qualified immunity to the extent that Cunningham alleged constitutional violations based on the *execution* of the ex parte order. Cunningham argues that it was error to do so, because, according to her, this Court "clearly established in 2018 that obtaining removal by ex parte process was a substantive due process violation." (Appellant Br. at 32).

The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity is an affirmative defense; once a defendant raises the defense, the burden shifts to the plaintiff to demonstrate that: (1) the defendant's acts violated a constitutional right; and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. *T.S. v. Doe*, 742 F.3d 632, 635 (6th Cir. 2014). To defeat the qualified immunity defense, the plaintiff is required to plead facts demonstrating a violation of a constitutional right that is clearly established in a "particularized sense." *Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (finding that the right to be free from malicious prosecution, though a clearly established constitutional right, is not sufficiently particularized in the context of a qualified immunity defense). That is, the right said to have been violated must be defined "in light of the specific context of the case, not as a broad general proposition." *Id.* (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

The Court can quickly determine that Wright is entitled to qualified immunity on this claim because Cunningham does not offer a single allegation as to any activity engaged in by Wright after he signed the verified application form. The Amended Complaint does not contain a plausible claim that Wright had any involvement—much less that he committed a constitutional violation—in the execution of the ex parte order. The Court can almost as quickly dispose of Cunningham's claim against Gray; although, unlike with the claim against Wright, Cunningham

does offer at least a threadbare allegation that Gray *served* the ex parte order. Assuming without deciding whether this amounts to a constitutional violation—a proposition that we are dubious of—we find no support in our cases to indicate that the mere service of an ex parte order—rather than actual removal of a minor child—amounts to a violation of clearly established law.

Cunningham relies heavily on *Brent v. Wayne Cnty. Dep't of Human Servs.*, 901 F.3d 656, 685-86 (6th Cir. 2018), where we held "that a social worker, like a police officer, cannot execute a removal order that would not have been issued but for known falsities that the social worker provided to the court to secure the order[.]" Cunningham is correct in stating that in *Brent* we did deny qualified immunity to a social worker who orchestrated the removal of minor children from a home. However, the social worker in that case actually enlisted police officers to remove the children and recruited them to do so under false pretenses. *Id.* at 668. The police officers then actually removed the children from the home, despite the fact that the order was facially defective. *Id.*

Here, the ex parte order permitted DCS to interview A.C. outside the presence of a third party, enter any place where A.C. was located in order to conduct the examination, forensically interview A.C. at the CAC, and take temporary custody of A.C. if necessary to complete the investigation. However, Gray did none of these things, nor did she engage in any activity that would have been tantamount to "removal" of A.C. Accordingly, Cunningham has not alleged that Gray has violated clearly established law in her service of the ex parte order.

## VIII.

Because all Defendants were entitled to immunity on Cunningham's claims not barred by *Rooker-Feldman*, the district court did not err in granting the defendants' motions to dismiss. We therefore AFFIRM the judgment of the district court.